24365.  McLENNAN v. ALDREDGE, Commissioner, et al.
24387.  ROBINSON, Member of County Board of Education,
et al. v. McLENNAN et al.
24388.  ALDREDGE, Commissioner, et al. v.
McLENNAN et al.

ARGUED NOVEMBER 14, 1967—DECIDED JANUARY 4, 1968.

*Alex McLennan, in propria persona.*  (Case No. 24365).

*Harold Sheats, Paul H. Anderson, Sutherland, Asbill & Brennan, James P. Groton, Madison Richardson,* for appellees.

*Sutherland, Asbill & Brennan, James P. Groton, Madison Richardson,* for appellants.  (Case No. 24387).

*Alex McLennan, in propria persona, Harold Sheats, Paul H. Anderson,* for appellees.

*Harold Sheats, Paul H. Anderson,* for appellants.  (Case No. 24388).

*Alex McLennan, in propria persona, Sutherland, Asbill & Brennan, James P. Groton, Madison Richardson,* for appellees.

UNDERCOFLER, Justice. This is a class action brought by a taxpayer of the City of Atlanta and Fulton County to enjoin the officials of Fulton County from collecting a county school tax and to have such county school tax levy declared null and void. The tax was imposed under authority of the 1937 amendment (Ga. L. 1937, p. 18, ratified June 8, 1937) to Art. VII, Sec. VI, Par. II (*Code* § 2-5402) of the Constitution of 1877 which amendment provides: "Furthermore, in any county in the State which has wholly or partly within its boundaries a city of not less than 200,000 population the county authorities thereof are hereby directed upon the request of the board of education of such county annually to levy a tax not exceeding 1½ mills for educational purposes, on all the taxable property throughout the entire county, including territory embraced in independent school systems, the same to be appropriated to the use of the county board of education and to educational work directed by them."

The petition alleges that now and at the time of the submission of the 1937 amendment to the people for ratification the City of Atlanta had an independent school system for which an annual ad valorem tax is levied; that Fulton County has a separate and distinct school system outside the City of Atlanta's independent school system for all county residents residing outside said city; and that the children of the City of Atlanta can not attend the Fulton County school system without paying a fee therefor.

The petition asserts that the tax is illegal for the following reasons: (1) The 1937 constitutional amendment authorizing such levy was not properly submitted to the people for ratification or rejection and consequently did not become a valid amendment to Art. VII, Sec. VI, Par. II (*Code Ann.* § 2-5402) of the Constitution of 1877 which was in effect at the time of the adoption of the 1945 Constitution; (2) The 1937 amendment was superseded entirely by the adoption of the 1945 Constitution wherein all previous Constitutions were repealed; (3) Said levy violates Art. VII, Sec. IV, Par. I of the 1945 Constitution (*Code Ann.* § 2-5701) and is illegal, null and void; (4) The 1937 con-

stitutional amendment was superseded entirely by the adoption of the 1945 Constitution wherein all previous Constitutions were repealed by Art. VIII, Sec. XII, Par. I (*Code Ann.* § 2-7501) and that the provisions of the 1945 Constitution are exclusive authority for levying school taxes; (5) The 1937 constitutional amendment violates the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution.

The defendants filed general demurrers to the amended petition, and upon an interlocutory hearing the trial court overruled the demurrers and denied the temporary injunction. The appeals are from these rulings. The appellant contends that the court erred in denying the injunction. The cross appellees contend that the general demurrers should have been sustained.

■ The 1937 constitutional amendment (Ga. L. 1937, p. 18) set out above was submitted to the people on ballots which provided for or against "ratification of amendment to Paragraph 2, of Section 6, of Article 7, of the Constitution authorizing 1½ mill county-wide tax for educational purposes in counties having cities of more than 200,000 population, wholly or partly within their boundaries."

The plaintiff contends that the formula adopted by the legislature for the submission of said amendment as above printed on the ballot was vitally and essentially different from the amending Act which sought to affect a county "which has wholly or partly within its boundary a city of not less than 200,000" whereas the formula for the ballots adopted by the legislature for the submission of the amendment to the people contained the language "in counties having cities of more than 200,000 population"; that the language of the amending Act shows that it could never affect or pertain to more than one county and to one city in the State; and that since the formula adopted by the legislature and used on the submission ballot did not specifically state that the tax would be used only for the county schools, as provided in the body of the amendment, the voters were misled concerning the nature, character and scope of the proposed tax. Because of these reasons, the plaintiff insists that the amendment was not properly ratified, never became a part

of the 1877 Constitution and accordingly is not a valid part of the 1945 Constitution.

It was held by this court in *Cooney v. Foote*, 142 Ga. 647, 654 (83 SE 537, AC 1916B 1001), that: "Article 13 of the Constitution did not prescribe the details relating to the manner of submission [of amendments to the Constitution of 1877], but left them to the wisdom of the legislature. It did provide for the publication of the proposed amendment, as a means of giving wide and extensive information of the exact nature of the proposed change or addition. It was never contemplated that the entire proposed amendment should be printed on the ballot. It was within legislative discretion to adopt some formula by which the voter would express his assent or dissent to the proposed amendment. The formula prescribed by the legislature was not intended for the purpose of informing the voter as to the full contents of the amendment. On the contrary, the formula was intended as the declaration by the voter of his approval or disapproval of the amendment which had been published in each congressional district. The amendment was submitted to the elector, and the formula prescribed was simply to elicit his expression as to whether or not the proposed amendment should become a part of the organic law. The formula written or printed on his ballot was but the legislative means of obtaining his expression upon the published proposal; and when he adopted the formula he indicated his vote upon the whole amendment which was submitted, and not a mere part." See also *Townsend v. Smith*, 144 Ga. 792, 796 (87 SE 1039).

In *Goolsby v. Stephens*, 155 Ga. 529, 540 (117 SE 439) this court held: "Section 3 of the Act proposing this amendment provides that the entire amendment should be submitted to the electors of the State for ratification or rejection. It was not necessary that the entire amendment should have been printed on the ballots. The reference on the ballots to the proposed amendment is to inform the voters what they are voting for as an amendment to the constitution; and such reference is sufficient when it contains enough to enable the voters to ascertain for what amendment they are voting. When this is done, the voters can be fully informed as to its full provisions by looking

to the proposed amendment. What is adopted as an amendment to the constitution is not what is printed on the ballots, but what is contained in the proposal for amending the constitution. The submission of the proposed amendment was sufficient."

In this case the formula which the legislature adopted was printed on the ballots submitted to the voters, and the ballot was sufficient under the above quoted decisions of this court and the prevailing provisions of the 1877 Constitution (Art. XIII, Sec. I, Par. I; Code § 2-8601) to inform the voters for what amendment they were voting.

The case of *Seago v. Richmond County*, 218 Ga. 151 (126 SE2d 657) is distinguishable from the instant case. That case dealt with an amendment to the Constitution of 1945 and was decided upon an interpretation of Ga. L. 1939, p. 305, which was passed subsequent to the ratification of the 1937 amendment to the Constitution of 1877 under attack here.

■ The contention that the 1937 constitutional amendment to Art. VII, Sec. VI, Par. II (*Code Ann.* § 2-5402) of the Constitution of 1877 was superseded by the adoption of the 1945 Constitution is without merit. The Constitution of 1945 specifically incorporated therein local amendments to the Constitution of 1877 which were in effect at the time of the adoption of the 1945 Constitution (Art. VII, Sec. X, Par. I; *Code Ann.* § 2-6301).

■ Art. VII, Sec. IV, Par. I (*Code Ann.* § 2-5701) of the Constitution of 1945 is a restriction on the power of the General Assembly to delegate to a county certain rights to levy a tax, and has no application to the instant case involving a constitutional amendment ratified by the people.

■ The petition alleges that the assessment and levy of the taxes under the 1937 constitutional amendment is an attempt to exact said tax by illegal action, since the resolution and levy thereof violate Art. VIII, Sec. XII, Par. I (*Code Ann.* § 2-7501) of the Constitution of 1945 which provides that the fiscal authority of the several counties shall levy a tax for the support and maintenance of education not less than five mills nor greater than twenty mills as recommended by the county board of education upon the dollar of all taxable property in the county lo-

cated outside the independent school systems. This contention is without merit.

"Different provisions of the Constitution should be harmonized, if practicable (*Hammond v. Clark*, 136 Ga. 313 (10a), 71 SE 479, 38 LRA (NS) 77), and repeals of constitutional provisions by implication are not favored by law. An amendment to a constitution repeals by implication existing constitutional provisions only when they are in irreconcilable conflict, and when they cannot reasonably stand together. *Stewart v. Bacon County*, 148 Ga. 105 (95 SE 983); *Clements v. Powell*, 155 Ga. 278 (116 SE 624); *DeJarnette v. Hospital Authority of Albany*, 195 Ga. 189, 204 (23 SE2d 716); 16 CJS 90, § 92." *McLucas v. State Bridge Building Authority*, 210 Ga. 1, 13 (77 SE2d 531).

The provisions of the 1945 Constitution and the 1937 amendment to the Constitution of 1877, incorporated therein, as held in Division 2, are not in irreconcilable conflict but are cumulative. The former places a millage limitation on one class of property, namely that located in a county outside the incorporated limits of any municipality having an independent school system and the latter permits a levy for school purposes throughout the entire territory of certain counties including the territory within certain municipalities. As we view it, these provisions are not repugnant but, on the contrary, construing them together and harmonizing them, their only effect is to increase the maximum millage for school purposes in certain counties on property located outside municipalities having an independent school system when an additional tax up to 1½ mills is levied on all property in such counties including that within the municipalities.

■ The petition alleges that the 1937 constitutional amendment violates the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution in that: (1) It is an arbitrary and unreasonable classification because it is based on the population of a city within a county, and Fulton County is the only county to which the amendment applies or can ever apply; (2) It discriminates against taxpayers of Fulton County who are located within the City of Atlanta by requiring them to bear part of the cost of the Fulton County school system established for children resident outside the city

as well as bearing the cost of the city's independent school system for children resident in the city, whereas the county taxpayers are only required to bear the cost of the county school system; (3) A classification based on population does not rest on any ground of difference having a substantial relation to taxation.

The tax structures of the various States are necessarily complex and consequently the fairness of the overall system with its burdens and benefits is not always readily discernible. The just distribution of tax assessments is an exceedingly difficult task. For this reason the determination of fiscal needs and revenue sources should rest almost completely with the State and its people. "The applicable principles have been often stated and are entirely familiar. The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. . . It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. . . 'To hold otherwise would. be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our Government and wholly beyond the protection which the general·clause of the Fourteenth Amendment was intended to assure.' Ohio Oil Co. v. Conway, [281 U. S. 146, 159 (50 SC 310, 74 LE 775)]." Allied Stores of Ohio v. Bowers, 358 U. S. 522, 526 (79 SC 437, 3 LE2d 480). "A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." Metropolitan Cas. Ins. Co. v. Brownell, 294 U. S. 580, 584 (55 SC 538, 79 LE 1070) ; *Dixie-Ohio Express Co. v. State Revenue Commission,* 186 Ga.

228, 234 (1) (197 SE 887), affirmed 306 U. S. 72 (59 SC 435, 83 LE 495).

The plaintiff's contention that the 1937 constitutional amendment violates the Fourteenth Amendment to the Federal Constitution because it applies only to the taxpayers of Fulton County and can never apply to any other area is without merit. It has been repeatedly held by this court that a classification of counties based on population which includes all counties which subsequently come within its provisions is a reasonable classification and is a sufficiently rational basis to withstand a constitutional attack though but a single county is embraced within the class affected by it. *Barge v. Camp*, 209 Ga. 38 (3), 44 (70 SE2d 360); *Crovatt v. Mason*, 101 Ga. 246 (28 SE 891); *Cooper v. Rollins*, 152 Ga. 588 (3) (110 SE 726, 20 ALR 1105). The 1937 constitutional amendment is not subject to this attack.

It has been held that so long as the law operates alike on all members of the class, which includes all persons and property similarly situated, it is not subject to any objection that it is special or class legislation. 16 AmJur2d 878, 879, § 502. The 1937 constitutional amendment applies equally to all property similarly situated in Fulton County, and the fact that the taxpayers within and without the City of Atlanta pay other and additional taxes for the support of its educational facilities does not render the amendment here in question invalid. It cannot be said that such classification does not have a substantial relation to taxation. "The rule is well settled that under usual circumstances and for most purposes, the legislature may, in the exercise of the various powers of state sovereignty which it possesses, employ population as a basis for classification, making distinctions applicable to people of different localities on such grounds, without violating any of the federal or state constitutional guaranties of equality. . . Such a basis for classification must have a reasonable relation to the purpose and objects of the legislation, and must be based upon a rational difference in the necessities or conditions found in the groups subjected to different laws." 16 AmJur2d 895, § 511.

" 'One of the basic principles involved in considering the validity of legislation assailed under equality provisions of the

federal and state Constitutions is that in the exercise of its power to make classifications for the purpose of enacting laws over matters within its jurisdiction, the state is recognized as enjoying a wide range of discretion. Therefore, whenever the power to regulate exists, the details of legislation and the exceptions proper to be made rest primarily within the discretion of the state legislature. The legislative power to classify includes the power to subclassify within reason.

" 'It is a principle of the utmost importance and one which must be kept in mind in any case that if the legislature has no authority to deal with the subject at which measures are aimed, a classification, however logical, appropriate, or scientific, will not be sustained. If such authority does exist, a classification may be deficient in all these attributes, may be harsh and oppressive, and yet be within the power of the legislature. . .' 16 AmJur2d 862, 863, § 495. . . There is a reasonable basis for classifying county school systems and independent school systems separately as to their respective support of their schools and imposing upon the independent school systems a burden of support by local taxation greater than required of a county system in order to receive state funds to support the minimum foundation program. There are several factors that the General Assembly might have considered in making this classification: (a) All of the independent school systems are located in incorporated municipalities, (b) there is a greater taxable wealth in cities than in unincorporated and rural areas, (c) cities are likely to have a greater wealth per capita or per pupil than suburban county school systems, (d) county school systems have constitutional limitations on their power to tax for school purposes, whereas a municipal independent school system is subject only to the limitations of its charter, and (e) the ratio of taxable wealth to the number of children to be educated is related to the purpose of the minimum education foundation program so that each local system bears its fair share of the total local effort required. The General Assembly had the right in the distribution of state funds to make such distribution in recognition of the financial, taxable wealth and other differences between city and county school systems. The classification here having a

reasonable basis does not offend the Constitution because it is not made with mathematical nicety or because in practice it results in some inequality." *Ingram v. Payton,* 222 Ga. 503, 510 (150 SE2d 825).

In the instant case it should be observed that the tax levy under attack was made by authority of a constitutional amendment by which the people established a separate classification and imposed a tax upon themselves for reasons best known to them.

Furthermore, the 1937 constitutional amendment has been in existence for about forty years. It was adopted originally in 1926 (Ga. L. 1926, Ex. Sess., p. 20) to authorize the imposition of a one-mill tax. Thereafter in 1937 it was readopted in an amended form to increase the authorized tax to one and one-half mills (Ga. L. 1937, p. 18). Consequently it has been an integral part of the fiscal planning and budgeting for the Fulton County school system for over four decades without complaint. ". . . [T]he fact that a classification is long unchallenged indicates its reasonableness." 16A CJS 247, § 489.

The plaintiff contends that the children of the taxpayers of Atlanta cannot attend the county schools without paying a special fee and therefore the city taxpayers receive no benefit from the county school tax.

The general rule is that "Since no system of taxation has yet been devised which will return to each taxpayer or class of taxpayers benefits in proportion to the payments made, the courts will not attempt to revise a necessarily complicated system of taxation to produce what might be thought to be a more just distribution of the burdens, and, where no conflict with federal power is involved, a state law will be held to deny equal protection of the laws only where it proposes or clearly results in such palpable inequality between the burden imposed and the benefit received as to amount to the arbitrary taking of property without compensation." 16A CJS 399, § 520.

At the hearing which was set to determine whether or not an interlocutory injunction should be granted to prevent the collection of the tax levied under the 1937 constitutional amendment, the stipulated evidence showed: That prior to 1926 (when

the first constitutional amendment was adopted authorizing the 1-mill tax as set out above) the City of Atlanta had a population of over 200,000 people, that it had annexed 22 areas which were urban and contained valuable commercial and industrial properties and relatively few people; and that Atlanta had acquired without cost the school buildings located in the annexed Fulton County territories which had been built, paid for and equipped by the Fulton County Board of Education. Between 1926 and 1937 (when the 1937 Constitutional Amendment was adopted levying a one and one-half mill tax) there had been 7 further annexations of property by Atlanta and such annexations have been so extensive that approximately three-fourths of Atlanta's present land area was a part of the unincorporated area of Fulton County in 1924. There have been approximately 69 annexations of territory since 1900. In addition to the school buildings Atlanta received by annexing Fulton County areas, it acquired commercial and industrial property with a high taxable value without a commensurate reduction in the number of students whom the county had to educate and thereby depleted the county tax digest but not its educational responsibilities to its children. The City of Atlanta has an interest in and is benefited by the high quality of the school buildings and equipment, the principals, teachers and pupils which it (according to its past history) will someday annex so that when they are taken into the city school system on annexation a lesser initial outlay of city funds will be required.

It is also of interest to note that in 1950 a constitutional amendment (Ga. L. 1950, p. 458) was ratified which added to Art. VIII, Sec. V, Par. I (*Code Ann.* § 2-6801) a provision whereby the ownership of all county school property would be transferred to the City of Atlanta upon the annexation and incorporation of such territory into the municipal limits.

Since the classification complained of complies with the requirements as to the equal protection of the laws, it amounts to due process of law. 16 AmJur2d 951, § 551.

The 1937 constitutional amendment does not violate the equal protection and due process clauses of the Fourteenth Amendment to the Federal Constitution, and the trial judge did not abuse his discretion in denying the interlocutory injunction.

890

The rulings of the trial court complained of by the appellant and the appellees are without merit.

*Judgment affirmed. All the Justices concur.*

## CORRECTIONS.

Page 225, lines 14 and 15 from top. Change "violation of . . ." to read, "in violation of the 14th Amendment to the United States Constitution and Article I, Section I, Paragraph III of the Constitution of Georgia."

Page 315, lines 18 and 19 from top. Change "Before Judge Henderson" to read, "Before Judge Ingram."

Page 381, lines 14 and 15 from bottom. Delete the words "Ann." and "Ga. L. 1959, pp. 353, 354."

Page 408, line 14 from top. Change "G. Lemuel Hawes" to read, "G. Lemuel Hewes."

Page 459, line 9 from top. Change "Before Judge Skelton, Emeritus" to read, "Before Judge Williford."